UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LUIS RIVERA, | : |
|     Plaintiff, | : |
| | : |
| v. | :   CASE NO. 3:17-cv-181 (VLB) |
| | : |
| KIMBERLY WEIR, et al., | : |
|     Defendants. | : |

## INITIAL REVIEW ORDER

Plaintiff, Luis Rivera, currently incarcerated at the New Haven Correctional Center in New Haven, has filed a complaint *pro se* under 42 U.S.C. § 1983 (2000). The complaint was received by the court on February 8, 2017, and his motion to proceed *in forma pauperis* was granted on April 12, 2017. The named Defendants are Warden Kimberly Weir; Deputy Warden Paul Oulette; Captain Woods; Counselor Supervisor Sandra Violette; Correctional Officers Alverado, Jane Doe 1 and John Doe 1; Correctional Counselors Kimberly Casey, James Zuccolo, Cassandra Moss and Jane Doe 2; and Lieutenant Dino Cichetti. All Defendants are named in individual and official capacities. Plaintiff alleges that Defendants unreasonably subjected him to a strip search in view of other inmate and female staff. He seeks declaratory relief and damages.

Under 28 U.S.C. § 1915A(b) (2000), the court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. In

reviewing a *pro se* complaint, the court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "pro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

### I. Allegations

On February 5, 2014, Plaintiff was housed in Dorm 9A at Carl Robinson Correctional Institution serving a nine-month sentence. Doc. #1, ¶ 18. At 8:30 a.m. inmates were allowed to exchange their identification cards for single blade disposable razors to shave. Doc. #1, ¶ 20. At 9:00 a.m., Defendant John Doe announced that one razor had not been returned. Doc. #1, ¶ 21. Operations in Dorm 9A remained normal through lunch time. Doc. #1, ¶¶ 22-23. Upon

2

returning from the dining hall, Defendant Cichetti ordered all inmates in Dorm 9A to go to their bunks and remain there. Doc. # 1, ¶ 26. All Defendants except Defendants Weir, Oulette, Woods and Violette were present in the dorm at this time. Doc. #1, ¶ 26. Defendants Alvarado, Zuccolo and Jane Doe 1 were patrolling the tiers adjacent to the bunks. Doc. #1, ¶ 27. The other Defendants were stationed throughout Dorm 9A. Doc. #1, ¶ 28.

While sitting on his bunk, Plaintiff observed Defendant Woods enter Dorm 9A, speak briefly to Defendant Cichetti, and leave. Doc. #1, ¶ 29. As Defendant Woods left Dorm 9A, Defendant Cichetti ordered the inmates, eighteen at a time, to go to an adjacent recreation room to be strip-searched. Doc. #1, ¶ 30. All Defendants except Defendants Weir, Oulette and Woods organized the searches. Doc. #1, ¶ 31. Defendant Violette was present only part of the time. Doc. #1, ¶ 32.

The recreation area is fully visible from Dorm 9A. Doc. #1, ¶ 33. When the searches began, inmate Bushwick complained to Defendant Cichetti that the searches were being conducted in direct view of female employees. Doc. #1, ¶ 34. Defendant Cichetti told him to undergo the search or go to restrictive housing. Doc. #1, ¶ 34.

Plaintiff was strip-searched by Defendant John Doe in direct view of seventeen other inmates in the recreation room, 100 inmates in Dorm 9A and all Defendants except Defendants Weir, Oulette and Woods. Doc. #1, ¶ 35. The search was recorded on a digital camera. Doc. #1, ¶ 37. Plaintiff saw Defendant Alverado, a female, and Jane Doe 1 observe naked inmates. Doc. #1, ¶ 38.

3

Defendants Jane Doe 2 and Moss were pointing at naked inmates and giggling. Doc. #1, ¶ 38.

There are seven private shower stalls adjacent to Dorm 9A that could have been used to conduct private strip searches. Doc. #1, ¶ 40. Following the strip searches, the inmates were sent to the gym while staff searched the housing area. Doc. #1, ¶ 41. Upon their return from the gym, normal operations resumed. Doc. #1, ¶ 42.

## II. Discussion

Plaintiff alleges that the Defendants violated his First Amendment right to practice his religion and his Fourth Amendment right to be free from unreasonable searches by conducting the searches in view of other inmates as well as male and female staff and by recording the searches. He also claims the Defendants violated Administrative Directive 6.7.

Where an inmate's Fourth Amendment claim challenges an isolated search, "courts typically apply the standard set forth in *Bell v. Wolfish,* 441 U.S. 520 (1979)." *Harris v. Miller*, 818 F.3d 49, 58 (2d Cir. 2016) (citing *Byrd v. Maricopa Cty. Sheriff's Dep't,* 629 F.3d 1135, 1141 n. 6 (9th Cir. 2011) (en banc)). Inmate strip searches "are constitutionally valid if they are reasonably related to a legitimate penological interest." *Perez v. Ponte*, No. CV 16-645 (JFB) (AKT), 2017 WL 1047258, at *19 (E.D.N.Y. Feb. 14, 2017) (citation omitted). Reasonableness is evaluated by considering "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is

4

conducted." *Bell*, 441 U.S. at 559. Correctional officials must be permitted to create reasonable search policies to detect and deter possession of contraband. *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington,* 566 U.S. 318, 328 (2012). Thus, absent "substantial evidence in the record to indicate that the officials exaggerated their response" to legitimate penological concerns, courts generally defer to the judgment of prison officials. *Id.* Here, Plaintiff does not object to the search itself, only to the fact that he was searched in the view of other inmates and staff.

Other district courts within the Second Circuit considering this issue have concluded that the presence of other inmates or staff, either male or female, does not render a strip search *per se* unconstitutional. *See Perez,* 2017 WL 1047258, at *20 (citing cases). Recent cases addressing an inmate's "right to privacy suggest that occasional, indirect, or brief viewing of a naked prisoner by a guard of the opposite sex may be permissible but that 'regular and close viewing' is prohibited." *Corr. Officers Benevolent Ass'n of Rockland Cty. v. Kralik*, No. 04 Civ. 2199(PGG), 2011 WL 1236135, at *11 (S.D.N.Y. Mar. 30, 2011); *see also Miles v. Bell*, 621 F. Supp. 51, 67 (D. Conn. 1985) ("As a general rule, courts have found a violation only in those cases in which guards regularly watch inmates of the opposite sex who are engaged in personal activities, such as undressing, using toilet facilities or showering.") (internal quotation marks omitted).

Plaintiff's claim related to one search. The presence of correctional staff and other inmates does not necessarily render the search unconstitutional. *See*

5

*Harris v. Miller*, 818 F.3d at 58-59 (noting that a cross-gender strip searches is a "greater invasion" of privacy and typically frowned upon) (citing *Canedy v. Boardman,* 16 F.3d 183, 185 (7th Cir.1994)). Plaintiff does not allege facts showing that he was regularly viewed by female staff. In fact, he does not allege that any female staff members looked at him in particular. Nor does he allege that the officers conducting the search were aware that it was being observed by female officers. The Second Circuit has noted that while best-practice standards in prison management typically discourage cross-gender strip searches, they may be necessitated by exigent circumstances. *Id.*

The search was justified and critical. In this circuit, inmates have a limited right to bodily privacy subject to prison security interests. *Covino v. Patrissi,* 967 F.2d 73, 78 (2d Cir.1992); *Powell v. Cusimano*, 326 F. Supp. 2d 322, 335-36 (D. Conn. 2004). A razor is a lethal weapon, particularly in the confines of a prison. That lethality created a clear and present danger to the safety and security of the occupants of the prison facility. That danger in turn created a legitimate and immediate penological interest in assuring the security and safety of inmates and staff by locating the razor as quickly as possible. When balancing a legitimate immediate need to locate the razor to assure the safety and security of the inmates and staff at the facility against an individual inmate's limited right to privacy, the scale tips in favor of safety and security.

Here, the reason for conducting the search, the lethality of the object of the search, the exigent circumstances, the large number of inmates who had to be

searched, the gender of the person conducting the search and the incidental nature of the privacy invasion justify the intrusion of Plaintiff's limited privacy rights. Thus, the Plaintiff has failed to raise a meritorious claim that his Fourth Amendment right to privacy was violated.

Plaintiff also argues that the search violated his right to practice his religion. To state a claim for violation of the right to freely exercise religion, Plaintiff "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274-75 (2d Cir. 2006). Plaintiff includes no facts to support this claim. A conclusory statement is insufficient to state a cognizable claim for relief. See *Iqbal*, 556 U.S. at 678. Accordingly, this claim is dismissed.

## CONCLUSION

The federal law claims in the Complaint are DISMISSED without prejudice pursuant to 28 U.S.C. § 1915A(b)(1). The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claim for failure to comply with prison directives. *See* 28 U.S.C. § 1367(c)(3) (if federal court dismisses all federal claims it may decline to exercise supplemental jurisdiction over supplemental state law claims). Plaintiff may pursue his state law claims in Connecticut Superior Court.

The dismissal is without prejudice to Plaintiff filing an amended complaint if he can allege facts to support a Fourth Amendment privacy claim or a First Amendment religious exercise claim. Any amended complaint should be filed

within twenty days from the date of this order using the Prisoner E-filing System.

SO ORDERED this 17th day of April 2017, at Hartford, Connecticut.

/s/
**Vanessa L. Bryant**
**United States District Judge**